UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK TIGGART,

Plaintiff,

v.

JAMES SCHIEBNER et al.,

Defendants.

Case No. 1:26-cv-1395

Hon. Hala Y. Jarbou

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### **I. Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues Warden James Schiebner, Deputy Warden Jeanine Winger, Mailroom Supervisor and Facility Business Manager Patricia Benson, and Mailroom Employees E. Burns-Gordon and K. Brown. (Compl., ECF No. 1, PageID.1–2.)

In Plaintiff's complaint, he alleges that on June 27, 2025, Plaintiff mailed a pleading to the Michigan Court of Appeals (MCOA). (*Id.*, PageID.5.) On August 4, 2025, Plaintiff wrote the MCOA clerk and asked if they had received Plaintiff's pleading. (*Id.*) On August 8, 2025, Plaintiff received a response from the MCOA clerk stating: "This office sent notice of acceptance of those pleading[s] to you by regular mail on July 11, 2025, and they have been docket[ed] as shown on the enclosed 'docket sheet,' and as of today's date, it has not been returned as 'unavailable.'"[1] (*Id.*)

On August 15, 2025, Plaintiff filed a grievance regarding the missing notice of acceptance. (*Id.*) On August 28, 2025, Defendant Benson[2] responded to Plaintiff's grievance and stated, "The mail room staff were interviewed and stated in their investigation summary [] that grievant's legal mail was processed in accordance with policy." (*Id.*) Plaintiff asserts that the grievance further stated: "Mailroom staff do not have a way to track or determine the location of mail that has not been received at the facility for processing." (*Id.*) Plaintiff states that if the mail was processed in accordance with policy, he should have received it, but he did not receive it. (*Id.*)

---

[1] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

[2] In his complaint, Plaintiff does not specify which Defendant responded to his grievance. (*See* Compl., ECF No. 1, PageID.5.) But Plaintiff attaches the grievance response to his complaint which shows that Defendant Benson responded to the grievance and Defendant Winger reviewed the grievance. (ECF No. 1-4, PageID.17–18.)

Plaintiff filed a step II grievance on September 9, 2025. (*Id.*) Defendant Schiebner responded,[3] stating: "The Step I investigation found that legal mail was sent to the facility by the [MCOA] on 7/11/25, and was not delivered to you." (*Id.*) Plaintiff filed a step III grievance on September 29, 2025, that was denied on November 5, 2025. (*Id.*) Plaintiff also asserts that he requested the ombudsman conduct a full investigation into his missing legal mail. (*Id.*) On March 23, 2026, Plaintiff spoke with the ombudsman analyst over the phone. (*Id.*) "[S]he informed Plaintiff that mailroom employees [Burns-]Gordon and Brown were the employees that worked in the mailroom the month of July 2025. And Benson w[as] the mailroom supervisor during the month of July 2025." (*Id.*)

Plaintiff asserts that "[t]he Defendants did in fact interfered [with], destroyed, lost, misplaced, or perhaps gave [Plaintiff's] legal mail to another inmate[.]" (*Id.*, PageID.6 (internal quotation marks omitted and phrasing in original retained).) Plaintiff states that Defendants Schiebner and Winger were "personally involved" because "they must make sure qualified supervisors and employees are capable of doing their jobs per policy." (*Id.*, PageID.5.) Plaintiff asserts that Defendant Benson was personally involved because "she must make sure that all employees in the mailroom know their job title, and their work performance must be up to par[] when handling incoming and out going mail." (*Id.*) Plaintiff similarly states that Defendants Burns-Gordon and Brown were personally involved as mailroom employees "because they must understand the mailing process . . . and most importantly . . . must understand the policies and procedure." (*Id.*) Plaintiff further asserts that Defendants Burns-Gordon and Brown were negligent

---

[3] Plaintiff also does not specify which Defendant denied the step II grievance in his complaint, (*See* Compl., ECF No. 1, PageID.5), but the grievance response attached to the complaint indicates that Defendant Schiebner responded to the step II grievance, (*See* ECF No. 1-4, PageID.20).

"for interfering with [Plaintiff's] legal mail." (*Id.*, PageID.6.) Plaintiff states that not receiving his legal mail, as well as serving a life sentence, "has resulted in an intentional infliction of emotional distress," and contributed to Plaintiff's high blood pressure. (*Id.*) Plaintiff claims he is being monitored by nurses for 90 days to get his blood pressure under control. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated Plaintiff's First Amendment right to receive legal mail and his Fourteenth Amendment right to due process. (*Id.*) The Court also construes Plaintiff's complaint to raise an access to the courts claim under the First and Fourteenth Amendments. As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Legal Mail Claims

Plaintiff asserts that Defendants violated his right to receive legal mail when they interfered with the delivery of Plaintiff's legal mail. (Compl., ECF No. 1, PageID.5–6.) For the reasons set forth below, Plaintiff fails to state a claim under the First Amendment regarding his legal mail.

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). The United States Court of Appeals for the Sixth Circuit considers mail sent from a court to be "legal mail." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003). Prison regulations governing "legal mail" are subject to a heightened standard than those governing general mail. *Id.*

at 873–74 (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). "'[B]latant disregard' for mail handling regulations concerning legal mail violates constitutional protections," and "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citations omitted).

Plaintiff states in a conclusory manner that "[t]he Defendants did in fact interfered [with], destroyed, lost, misplaced, or perhaps gave [Plaintiff's] legal mail to another inmate[.]" (Compl., ECF No. 1, PageID.6 (phrasing in original retained).) However, Plaintiff fails to allege any facts to support this conclusory assertion. Plaintiff asserts that the MCOA clerk confirmed that the MCOA had received Plaintiff's pleading and sent Plaintiff a notice of acceptance of the pleading on July 11, 2025. (*Id.*, PageID.5.) Plaintiff asserts that he never received the notice of acceptance in the mail and filed grievances regarding the notice of acceptance. (*Id.*) But Plaintiff has not set forth any *facts* to suggest that his mail was mishandled by Defendants as Plaintiff avers. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Additionally, even if Plaintiff were to state sufficient facts to allow this Court to infer that his mail was mishandled on this one occasion, isolated instances of interference with prisoners' mail typically do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to

establish a constitutional violation" (citation omitted)); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation).

Here, Plaintiff alleges that on one occasion, he did not receive the notice of acceptance of his pleading from the MCOA. The Court recognizes that legal mail is entitled to additional protection and that it is possible that under some circumstances, even one instance of improperly processing legal mail could violate an inmate's constitutional rights. *See Sallier*, 343 F.3d at 873–74. However, the facts alleged by Plaintiff are not such a circumstance. Plaintiff alleges that his legal mail was mishandled by Defendants on one occasion, and as a result, he did not receive the mail, which consisted of a notice of acceptance of a filing that was received by the MCOA. Without more, this threadbare allegation does not suggest a blatant disregard for mail handling. *See Merriweather*, 569 F.3d at 317.

Furthermore, Plaintiff's factual allegations are insufficient to show that any of the named Defendants were personally involved in the alleged mishandling of his legal mail. Other than stating that Defendants Burns-Gordon and Brown were the employees working in the mailroom in July 2025, Plaintiff has not set forth any facts to suggest that Defendants Burns-Gordon and Brown were the individuals involved in the alleged interference with Plaintiff's incoming legal mail. (Compl., ECF No. 1, PageID.5.) Where a person is named as a defendant without an allegation of specific conduct, the claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing

plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Plaintiff also asserts that Defendants Burns-Gordon and Brown were negligent in handling Plaintiff's legal mail. However, an allegation of negligence does not support a claim under § 1983. *See Wojnicz v. Davis*, 80 F. App'x 382, 384 (6th Cir. 2003) ("Mere negligence is not actionable under § 1983." (citation omitted)); *Gibbs v. Hopkins*, 10 F.3d 373, 379 (6th Cir. 1993) (discussing that prison officials' negligent failure to conduct an inmate's monthly review would not be actionable under § 1983). Moreover, as stated above, Plaintiff does not state any facts to show that Defendants Burns-Gordon and Brown were the individuals who negligently handled his mail. "Conclusory allegations, unsupported by material factual allegations, are not sufficient to state a claim under § 1983." *Wojnicz*, 80 F. App'x at 384. Plaintiff therefore fails to state sufficient facts to state a claim that Defendants Burns-Gordon and Brown mishandled Plaintiff's legal mail in violation of his First Amendment rights.

As to Defendants Benson, Schiebner, and Winger, Plaintiff asserts that these Defendants were personally involved in the mishandling of Plaintiff's mail because as supervisors, they must ensure that all employees perform their duties and understand mail policies. (Compl., ECF No. 1, PageID.5.) However, government officials, such as Benson, Schiebner, and Winger, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based on active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532

F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). And § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> A supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Benson, Schiebner, and Winger encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory liability are insufficient to demonstrate that Defendants Benson, Schiebner, and Winger were personally involved in the alleged violations of Plaintiff's constitutional rights.

Accordingly, for all of the aforementioned reasons, Plaintiff fails to state a First Amendment claim for interference with his legal mail.

## IV. Access to Courts

The Court generously construes Plaintiff's complaint to raise an access to the courts claim under the First and Fourteenth Amendments regarding the alleged interference with Plaintiff's legal mail.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995) (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Knop*, 977 F.2d at 1000.

In this action, Plaintiff alleges that he filed a pleading in the MCOA, and upon inquiry, learned that the MCOA had accepted his pleading and sent Plaintiff a notice of acceptance. (Compl., ECF No. 1, PageID.5.) While Plaintiff did not receive the notice of acceptance, Plaintiff does not state that his ability to litigate his case in the MCOA was impeded by not receiving the notice of acceptance. (*See id*.) And, Plaintiff does not allege any facts to suggest that not receiving the notice resulted in any harm to Plaintiff's underlying MCOA action. Because Plaintiff fails to allege any actual injury, his access to the courts claim is subject to dismissal. *See Lewis*, 518 U.S. at 349.

Accordingly, for these reasons, Plaintiff's access to the courts claim will be dismissed for failure to state a claim.

## V. Due Process Claims

Lastly, Plaintiff claims that his Fourteenth Amendment right to due process was violated when he did not receive his legal mail. The Court also construes Plaintiff's complaint to raise a due process claim regarding the rejections of Plaintiff's grievances.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). It is well established that a plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401).

As an initial matter, stated above, Plaintiff fails to allege any facts to indicate that the named Defendants mishandled his legal mail. Plaintiff only states that he never received his legal mail but fails to state any facts suggesting that it was mishandled, let alone by the named Defendants.

Moreover, regardless, to the extent that Plaintiff alleges that Defendants deprived him of property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See*

*Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs*, 10 F.3d at 378. The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff does not allege that his state post-deprivation remedies are inadequate. Plaintiff has numerous state post-deprivation remedies available to him. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Further, as to any intended due process claims regarding the filing of grievances, in Plaintiff's complaint, Plaintiff references filing grievances regarding his missing legal mail, and he attached those grievances to his complaint. (Compl. ECF No. 1, PageID.5; ECF No. 1-4, PageID.17–22.) Defendant Benson denied Plaintiff's grievance, and Plaintiff appealed to step II. (Compl., ECF No. 1, PageID.5; ECF No. 1-4, PageID.17–19.) Defendant Schiebner denied Plaintiff's step II appeal, and a non-party denied Plaintiff's step III appeal. (Compl., ECF No. 1, PageID.5; ECF No. 1-4, PageID.20–22.)

However, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002). Michigan law does not create a liberty interest in the grievance procedure. *See Olim,* 461 U.S. at 249; *Keenan v. Marker*, 23 F.

App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, although it is clear that Plaintiff disagreed with Defendants' responses to his grievances, because Plaintiff has no liberty interest in the grievance process—including the responses to grievances—Defendants' conduct did not deprive Plaintiff of due process.

Additionally, the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee*, 199 F.3d at 300. The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.*

Moreover, to the extent that Plaintiff alleges that Defendants violated the MDOC's policy, he fails to allege a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). And, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment due process claim regarding his legal mail and grievances.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: October 2, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE